**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**Civil Action Number:  1:18-cv-07483**

ANCEL MONTENELLI, On His Own
Behalf, and On Behalf of All Other
Individuals Similarly Situated,

       Plaintiffs,
vs.

MENARD, INC.,
d/b/a Menards,

      Defendant.

---

## AMENDED COMPLAINT - CLASS ACTION

---

      COMES NOW Plaintiff Ancel Montenelli on his own behalf and on behalf of all

Other Individuals Similarly Situated, by and through his undersigned counsel, hereby

files this Amended Complaint as a Class Action suing Defendant Menard, Inc. d/b/a

Menards ("Defendant") for injunctive relief pursuant to 42 U.S.C. §§12181-12189 of the

Americans with Disabilities Act ("ADA"), 28 C.F.R. Part and allege as follows:

### <u>INTRODUCTORY STATEMENT</u>

      1.     This is an action to end the exclusion of disabled people from the

Menards truck and van rental business that they offer in fourteen (14) states and two-

hundred and twenty (220) of their stores.

      2.     Plaintiff seeks to stop the systemic civil rights violations being committed

by Defendant against the mobility impaired community who seek the full and equal

enjoyment of the goods and services at the Menards vehicle rental places of public accommodation in a manner equal to that afforded to others.

3.      Defendant owns and operates place(s) of public accommodation which are general goods stores under the brand name "Menards." Along with other associated goods and services, Defendant offers for rent to the public trucks and vans ("goods and services,"; "rental vehicles or conveyances") for rent by the hour.

4.      Menards offers their trucks and vans to rent to **<u>anyone</u>** who has 1) a Driver Licensee 2) Proof of Insurance, and 3) a Credit Card.

5.      Menards has no "Policy" to offer their trucks or vans for rent to anyone other than able bodied customers (non-disabled individuals).

6.      Despite having teams of professionals providing services and advice regarding their operations, Menards has never offered truck and/or van conveyances for rent by non-able bodied customers who require ADD (Assistive Driving Devices).

7.      Menards has never noticed the public that their van and truck rental program was intended for offer to only a portion of the public, even though "Hand Controls" have been incorporated into the Code of Federal Regulations for over twenty-five (25) years.

8.      This action alleges that Defendant has violated federal laws and regulations by failing to ensure that Defendant's conveyance rental operation accommodates individuals with disabilities; which Defendant could do if it removed barriers to access in the conveyance rental portion of its business (which it offers to the public).

9.     Plaintiff Ancel Montenelli, on his own behalf, and on behalf of all other individuals who are similarly situated, brings this action to stop the marginalization of mobility impaired patrons of Menards vehicle rental business.

10.     This Complaint seeks declaratory and injunctive relief to have Defendant create policies and practices to include measures necessary to ensure compliance with federal law, to remove barriers in Defendant's business so that individuals who are disabled and require hand controls to operate vehicles are provided with adaptive equipment by Defendant in a timely and efficient manner so their access to the goods and services offered by the defendant is not impaired or impeded.

## JURISDICTION

11.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), and 42 U.S.C. §12101, et. seq.

12.     This Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343(a)(3) and §1343(a)(4)

13.     Venue is proper in the Court, pursuant to 28 U.S.C. §1391(b) in that all events giving rise to this lawsuit occurred within the Northern District of Illinois.

## PARTIES

**Ancel Montenelli**

14.     Plaintiff Ancel Montenelli (also referenced as "Plaintiff," or "Plaintiff Montenelli") is a resident of the state of Illinois, is disabled and a qualified individual as defined by the ADA

15.     Plaintiff suffers from spinal cord injury and uses a wheelchair for mobility, thus suffers from what constitutes as a "qualified disability" under the Americans with Disabilities Act ("ADA"). The Plaintiff's disability is defined in 42 US Code §12012(1)(A) and in 42 U.S.C. 3602 §802(h).

16.     Plaintiff Ancel Montenelli has been a loyal customer of Menard's stores for at least ten years prior to this action; see preferred customer card attached hereto as Exhibit A.

**Other Plaintiffs Similarly Situated – Class Members**

17.     Other plaintiffs similarly situated to Plaintiff Montenelli ("Class Members") are qualified individuals with disabilities under, and as defined by, the ADA.

18.     Other plaintiffs are similarly situated to Plaintiff Montenelli (and therefore are Class Members) by virtue of the fact that they are mobility impaired and use ADD's (which are commercially available) to operate motor vehicles.

19.     Other individuals similarly situated are also unable to operate a motor vehicle (such as offered for rent by Defendant) without the aid of hand control devices.

**Menards, Inc.**

20.     Defendant Menard, Inc. is an Illinois corporation doing business as Menards. Defendant is authorized to conduct, and is conducting, business within the State of Illinois.

21.     Defendant is a privately-owned company headquartered in Eau Claire, Wisconsin and has more than three hundred (300) home improvement stores under the brand name "Menards" which are located in Illinois, Indiana, Iowa, Kansas, Kentucky,

Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Wisconsin and Wyoming.

22.    At all times material hereto, Defendant has owned and/or operated Menards home improvement store facilities located at 2333 South Cicero Avenue, Cicero, Illinois 60804 ("Menards-Cicero") and 6100 East Avenue, Hodgkins, Illinois 60525 ("Menards-Hodgkins"). The Menards facilities which are the subject of this action and are also referred to as "Menards" or "place(s) of public accommodation."

23.    All events giving rise to this lawsuit occurred in the State of Illinois

24.    Menards-Cicero and Menards-Hodgkins are each places of public accommodation pursuant to 42 U.S.C. §12181(7)(E) because they are each an "other sales or rental establishment" which offer rental of vehicles to the general public.

## FACTS

25.    Plaintiff Montenelli is long time customer of the Defendant, lives less than ten miles from Defendants Menards-Cicero store, possesses 1) a valid driver's license, 2) valid auto insurance, 3) a credit card. In addition, Plaintiff Montenelli has concrete plans to rent a truck from the Defendant.

26.    Plaintiff Montenelli decided he wanted to update and enhance his backyard and decided he needed to rent a truck assist him in his project.

27.    Therefore, on June 10, 2018 Plaintiff Montenelli decided the best business to rent a truck for a limited use was from his local Menards. Therefore, he visited his local Menards store, which was the Menards-Cicero location with the intention of renting a truck.

28.     At the time of his visit to the Menards-Cicero location Plaintiff Montenelli met Defendant's representative who identified herself to the Plaintiff as "Karla." Plaintiff informed Defendant's representative that he could not use his legs and therefore needed to have hand-controls temporarily installed in the rental truck so that he could drive the truck which he intended to rent.

29.     In response to Plaintiff's request, Karla informed Plaintiff that Defendant does not offer vehicle hand controls in any of their rental vehicles, therefore they could not accommodate Plaintiff's request.

30.     Therefore, Plaintiff Montenelli left the Menards-Cicero location without renting the truck from Defendant.

31.     Later, Plaintiff Montenelli visited a different Menards location (the Menards-Hodgkins location), reasoning that it must be a mistake that Menards would only offer their trucks to able-bodied people.

32.     At the time of his visit to the Menards-Hodgkins location, Defendant's rental trucks were plastered with signage detailing the terms of rental; see photo of "Truck Rentals" sign at Exhibit B.

33.     The signs on Defendant's rental trucks did not state that those trucks were not available to individuals with mobility impairments or only for the non-disabled.

34.     The trucks which Defendant offers for rental are available for rent by anyone who has:

1)  Valid driver's license,

2)  Proof of Insurance, and

3) Credit Card; see transcript of deposition at Exhibit C, pages 18-19 lines 25-25 & 1-6.

35.     While at the Menards-Hodgkins location, Plaintiff Montenelli informed Defendant's representative that he was looking to rent a truck. He additionally told that representative that he could not use his legs and requested that temporary hand controls be installed in the rental truck so that he could drive the truck which he intended to rent.

36.     In response to Plaintiff Montenelli's request that hand controls be installed in the rental truck, Plaintiff Montenelli was informed by Defendant's representative at the Menards-Hodgkins location that Menards does not have a policy to provide vehicle hand controls for temporary installation in their rental vehicles.

37.     Therefore, the Menards-Hodgkins location could not accommodate Plaintiff Montenelli by renting him a truck which he could independently operate in an equal manner as non-disabled individuals.

38.     Plaintiff Montenelli did not desire or expect that any vehicle he would rent would be provided with permanently hand controls affixed to a rental truck, but that Defendant would maintain a policy which would provide that its vehicle/truck rental locations would be equipped to temporarily install hand controls so the he non-abled-person could independently operate the rental truck over the course of the intended rental period in the same manner as the able-bodied public.

39.     There are numerous companies that sell vehicle hand controls that are universal in design, meaning that they can be used on any vehicle.  Installation of hand controls does not render any safety feature inoperable or cause permanent modification or damage to the vehicle itself.

40.     Furthermore, installation of hand controls is quick and easy. For example, the Automobility 901 model as used by Enterprise is a permanent quick-attach manual hand control unit that requires no hardware to install and is attached with straps and no bolting or cutting and can be installed in minutes.

41.     Hand Drive Co. has developed a system that is so portable that the unit can be handed to the rental agent to the renter for the renter's attachment of the unit on the rental vehicle.  When placed on the steering wheel, the Hand Drive unit connects to motors that operate the gas and break.  The pre-installed motors within the steering column allow the user to attach the Hand Drive without performing any installation.

42.     In fact, there are temporary hand controls available for less than $300 USD. For example, Allegro Medical offers one such system for $269.00[1] and Peddle Master portable hand controls are available for $274.05[2].

43.     These hand controls can be installed in fifteen to twenty minutes which could convert any rental vehicle or truck into a vehicle which could be driven by a mobility-impaired driver (such as the Plaintiff).

44.     Such hand controls are widely used within the car rental agency world[3] and are designed for temporary installation and easy removal and could easily have been installed in each of the Menards locations which Plaintiff Montenelli had intended to rent.

---

[1] https://www.allegromedical.com/travel-aids-c6857/freedom-staff-handicap-driving-hand-controls-p574681.html?CS_003=9164468&CS_010=ff808181527d5f580152801c1b0500bb&gclid=EAIaIQobChMI4oT-6K3k4QIVieDICh2RPQPvEAQYASABEgJDQPD_BwE#999+574681+01
[2] https://www.vitalitymedical.com/peddle-master-portable-hand-controls.html?matchtype=&network=g&device=c&adposition=1o2&keyword=&gclid=EAIaIQobChMI4oT-6K3k4QIVieDICh2RPQPvEAQYAiABEgIqLvD_BwE
[3] For example, National, Budget, and Avis use the Kroepke Kontrol; Enterprises uses the Automobility 901;

45.     Defendant has failed to initiate a policy to provide ADD (Assistive Devices Devices) to accommodate disabled individuals despite readily available assistive devices being on the market for over twenty years at cost of less than $300 and taking nor more than twenty minutes to install.

46.     Defendant's policies have resulted in the segregation of wheelchairs users by denying them the ability to participate in the rental (and operation) of trucks which are available to the public through its truck rental division

47.     Plaintiff left both Menards locations shocked and upset with more than disappointment in his mouth, but with the real taste of ridicule and insult.  Once again ignorance trumped reason, and he again felt the sting of unconscious basis and being segregated into being the **"other",** yet again being told that disabled people are some type of burden, some type of second-class citizen, despite the current American war hero and Illinois Junior Senator in the United States congress being a paraplegic.[4]

48.     Plaintiff was dowsed with embarrassment and humiliation over being unable to rent and operate a rental truck from the Defendant, twenty-eight years after the passage of the ADA.

49.     Plaintiff Montenelli was denied full and equal access to, and full and equal enjoyment of, the facilities offered by Menards to the public, all in violation of the ADA.

---

[4] The Honorable Ms. Ladda Tammy Duckworth is an American politician and former U.S. Army lieutenant colonel who has served as the junior United States Senator for Illinois since 2017. A member of the Democratic Party, she represented Illinois's 8th district in the United States House of Representatives from 2013 to 2017.

50.     Defendant's Corporate Representative has stated that Defendant does not have a policy to supply hand controls for rental vehicles. See transcript of deposition at Exhibit C, page 15 lines 8-10.

51.     Without regard to the Defendant's enormous commercial footprint or that of being "well healed", the Defendant knew or should known that they were required by law to remove obvious barriers to their offered good and services.

52.     Defendant's admitted lack of instituting a policy to address the needs of the mobility impaired disabled community is in violation of the ADA.

53.     Defendant's Corporate Representative has stated that, following Defendant being served the original complaint, the Defendant purchased a temporary hand control unit for $250 USD, see transcript of deposition at Exhibit C, page 24 lines 6-10.

54.     Defendant's Corporate Representative has stated that he had personally installed the temporary hand control unit that Defendant purchased in a vehicle without having been trained for the installation, that no technical knowledge was needed, and that he installed that hand control unit within fifteen minutes, see transcript of deposition at Exhibit C, page 24 lines 11-24.

55.     Defendant's Corporate Representative has admitted that providing temporary hand control units at its vehicle rental locations is not impossible. Exhibit C, page 28 lines 6-9.

56.     Defendant's Corporate Representative has admitted that installing ADD in their fleet would not fundamentally alter the Defendant's business; see transcript of deposition at Exhibit C, page 28 lines 6-9.

57.     Defendant's Corporate Representative admitted that installing temporary hand control is readily achievable.

58.     As a result of the Defendants' discriminatory policies, Plaintiff Montenelli has suffered loss of dignity, mental anguish, physical harm, and other tangible injuries.

59.     For all of the foregoing, Plaintiff Montenelli has no adequate remedy at law.

60.     Plaintiff Montenelli has retained the Civil Rights lawyer Scott R. Dinin and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff Ancel Montenelli brings this case as a class action pursuant to Federal Rule of Civil Procedure Rule 23, in that the class is so numerous that joinder of all members is impracticable (F.R.C.P. Rule 23(a)(1)), there are questions of law and fact common to the class (F.R.C.P. Rule 23(a)(2)), the claims and defenses of the representative party is typical of those of the class (F.R.C.P. Rule 23(a)(3)), and Plaintiff Montenelli (as representative party) will fairly and adequately protect the interests of the class (F.R.C.P Rule 23(a)(4)).

38.     The Members of the Class ("Class Members"), are defined as follows:

> All mobility impaired individuals residing within the llinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, Wisconsin and Wyoming who were potential customers of Menard's vehicle rental business from June 1, 2016 to the present time[5], who either rented a vehicle or attempted to rent a vehicle from Menard's but who were not provided with hand

---

[5] or who were acting on behalf of others, whom were customers of Menard's retail stores and vehicle rental business

control device in order to operate the vehicle (that they intended to rent or that they rented and another party was required to operate as the intended operator (Class member) was unable to operate the rental vehicle due to the failure of Menard's to provide a (temporarily installed) hand control device with the rental vehicle.

The Class of mobility impaired individuals (who can operate a vehicle with hand control devices) are a protected class under the ADA, 42 U.S.C. § 12102(1)-(2).

39.    The "Class Period" is June 1, 2016 to the present.

40.    Excluded from the Class are: Defendant, its employees, its legal representatives, assigns, and successors, any entity which owns/controls Defendant and its agents and assigns, and any entities in which Defendant has a controlling interest. Also excluded is the Judge to whom this matter has been assigned and including the Judge's immediate family and staff.

41.    Plaintiffs reserve the right to revise the Class definition based upon facts learned in the course of litigating this matter and through the discovery process.

42.    The Class is so numerous that a joinder of each individual member is impracticable (F.R.C.P. Rule 23(a)(1)).

43.    There are numerous common questions of law and fact, including but not limited to:

a. Whether Defendant has violated Title III of the ADA by failing to provide ADD's or temporary hand control devices with their rental vehicles to mobility impaired patrons.

b. Whether Defendant has violated Title III of the ADA by failing to make reasonable modifications in its policies, practices, or procedures to ensure that mobility impaired patrons who use hand control devices to operate vehicles have

the opportunity to rent and independently operate the rental vehicles which Defendant offers for rent to the public.

44.     The claims of Plaintiff Montenelli are typical of the claims of the class because they arise from the same course of conduct engaged in by Defendant, are based on the same alleged violations of the same statutes and regulations and seek the same relief.

45.     Plaintiff Montenelli is an ideal representative of the Class since he suffers from a qualified disability, in that he is mobility impaired and requires ADD or hand control device to operate a motor vehicle or conveyance.

46.     Certification under F.R.C.P. Rule 23(1)(A) is proper because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendant.

47.     Certification under F.R.C.P. Rule 23(b)(2) is also proper because the Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the eniter proposed class.

48.     The questions of law or fact common to class members predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

49.     Similarly, the claims and defenses to be raised by and against the parties herein are typical of the claims or defenses which would be raised by the members of the Class if they were a party to this action.

50.     Plaintiff seeks injunctive relief for the implementation of the relief provided by the ADA which is the same relief which would be sought by each class member if he or she brought a claim individually.    Accordingly, Plaintiff (as representative party for the Class) will fairly and adequately protect the interests of the Class Members.

51.     Defendant has discriminated against Plaintiff Montenelli and Class Members by denying adaptive equipment for use with its rental vehicles.

52.     Defendant has failed to provide temporary hand controls to its mobility impaired patrons who wish to rent, and to independently operate, motor vehicles which Defendant offers for rent to the public. As such, Defendant does not adequately serve the mobility impaired public such as Plaintiff and Class Members.

53.     Defendant has been and is operating its vehicle rental business in violation of Plaintiff  and Class Members' rights as protected by the ADA. Plaintiffs Montenelli and Class Members are entitled to injunctive relief.

54.     Plaintiffs Montenelli and Class Members have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for and injunctive relief is their only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

55.     Plaintiffs Montenelli and Class Members will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

56.     Notice to Defendant is not required as a result of its failure to cure the violations.

57.     Unless enjoined by this Court, Plaintiffs Montenelli (and the Class Members) will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices as set forth herein.

58.     Plaintiff Montenelli (on his own behalf and on behalf of Class Members) has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiffs are entitled to have reasonable attorneys' fees, costs and expenses paid by the Defendant.

59.     Enforcement of Plaintiffs' rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

60.     Plaintiffs reserve the right to revise the class definition based upon facts learned in the course of litigating this matter and through the discovery process.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

61.     The Americans with Disabilities Act ("ADA") is landmark Civil Rights legislation that is the result of decades of advocacy to improve the lives and role in society of all persons with disabilities.

62.     The ADA was enacted and effective as of July 26, 1990.  The ADA legislation has been protecting disabled persons from discrimination due to disabilities for 29 years.  As such, all public accommodations and facilities have had adequate time for compliance.

63.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

15

(ii)    provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

(iii)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4).

64.    Pursuant to 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104, Defendant's Menards-Cicero and Menards-Hodgkins Menards store locations are each a "place of public accommodation" in that they are each an "other sales or rental establishment" and are open to the general public.

65.    Defendant Menard, Inc. is defined as a "Public Accommodation" within meaning of Title III because it owns, leases, leases to others, or operates an "other sales or rental establishment"; 42 U.S.C. §12182, §12181(7)(E).

66.    Defendant has discriminated against Plaintiffs by failing to provide policies and procedures to provide adaptive equipment to individuals who are mobility impaired and by such failure building barriers to its products and services as provided to the general public, in derogation of 28 C.F.R. §36.304(21).   28 C.F.R. §36.304(21) states that, with respect to "[i]nstalling vehicle hand controls" … "[a] public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable."

Sec.36.304 Removal of barriers.

> (a) **General. A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense**.
>
> (b) Examples. Examples of steps to remove barriers include, but are not limited to, the following actions –

> (21) **Installing vehicle hand controls**.

67.    Defendant has discriminated, and continues to discriminate, against Plaintiffs by its policy of denying full and equal access to, and full and equal enjoyment of, goods, services, facilities, privileges, advantages and/or accommodations at its Menards-Cicero and Menards-Hodgkins locations, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq., and by failing to remove barriers to access pursuant to 42 U.S.C. §12182(b)(2)(a)(iv), where such removal is readily achievable. (*barriers in existing facilities… where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense*.)

68.    Plaintiffs have been unable to (and continue to be unable to) enjoy full and equal safe access to (and the benefits of) the accommodations and services offered to the public at Menards.

69.    Prior to the filing of this lawsuit, the Plaintiff Montenelli was a long-time customer of the defendant.

70.    Plaintiff visited Defendant's Menards-Cicero and Menards-Hodgkins locations with the intention of renting a truck, and even later check their website for information on ADD in their offerings, but as an individual with a disability (loss of use/function of his lower extremities) has been denied adequate accommodation by

virtue of being unable to rent a truck accompanied by hand controls so the he could use the (rental) truck over the course of the intended rental period. Plaintiff Montenelli therefore suffered an injury in fact.

71.     Plaintiff Montenelli has concrete plans to update and enhance his backyard and starting with the 2020 spring season (on or about May 1, 2020) he plans on returning to Defendant's Menards-Cicero location to rent a truck.

72.      Plaintiff Montenelli continues to desire to patronize Menards and rent a truck in the future, but continues to be discriminated against and injured due to the policies of Defendant which have failed to address barriers to access.

73.      Defendant's policies and actions indicate that Defendant believes that it is their customers responsibility to explain application of federal and state laws to their business, and even that customers should bring their own access equipment in order to to participate in Defendant's offerings.

74.     Defendant has failed to understand it is responsible for providing equal accommodations, and for removing open and obvious barriers.

75.     Defendant demands notice when none is required.

76.     Defendant has zero information on ADD accommodations in their stores, Website, emails, or weekly circulars.

77.     On information and belief, Class Members desire to patronize Menards and rent a vehicle, but continue to be discriminated against and injured due to the barriers to access and use of a rental truck due to Defendant's failure and refusal to equip rental vehicles with hand controls which would accommodate Class Members' intended rental (of a truck) for their personal use.

78.    Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991 (as amended), the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the Americans with Disabilities Act Accessibility Guidelines (hereinafter "ADAAG"), 28 C.F.R. Part 36, under which said Department may obtain civil penalties of up to $75,000 for the first violation and $150,000 for any subsequent violation.

79.    Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

a)  A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b)  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D" and at 28 C.F.R. §36.304(21), specifically include vehicle hand controls.

c)  Alterations are readily achievable, as Defendant may purchase temporary hand controls for less than $300 each and have one such temporary hand control at each of its locations.  Defendant could make alterations by purchasing temporary

hand controls to have available at each of its vehicle rental locations so they are readily accessible to and usable by individuals with disabilities and in so doing comply with 42 U.S.C. § 12183(a)(2).

80.     Under the ADA, any person who owns or operates a place of public accommodation, such as sales or rental business (as is Defendant's vehicle rental service) must ensure that the goods, services, privileges, advantages and opportunities are offered on a full and equal basis. 42 U.S.C. § 12182(a).

81.     If there are physical barriers that have the result of excluding persons with disabilities from fully enjoying such goods, services, privileges or advantages, then those barriers must be removed if readily achievable to do so. 42 U.S.C. §12182(b)(2)(A)(iv). Failure to do so is an act of discrimination. *Id.*

82.     "A public accommodation shall remove architectural barriers in existing facilities …. where such removal is readily achievable, *i.e.*, easily accomplishable and able to be carried out without much difficulty or expense," 28 C.F.R. § 36.304(b).

83.     Among the barrier removal tasks that are readily achievable to accomplish is installing vehicle hand controls. 28 C.F.R. § 36.304(b)(21).

84.     Defendant's failure to provide any rental vehicle with hand controls (when provision is readily achievable), has resulted in persons with disabilities (such as Plaintiffs Montenelli and Class Members) being denied the opportunity to rent (and independently operate) a vehicle is discriminatory and a violation of the law.

85.     Under the ADA, Defendant has an obligation to make reasonable modifications in its policies, practices or procedures when necessary to afford privileges, advantages or accommodations to individuals with disabilities unless making such

20

modification would fundamentally alter the nature of such accommodations. 42 U.S.C. §12182(b)(2)(A)(ii).

86.     Here, providing temporary a vehicle hand control on a rental vehicle so that persons with disabilities can rent and operate that rental vehicle to enjoy the same driving privileges enjoyed by ambulatory customers does not result in a fundamental alteration of Defendant's business and is not cost prohibitive (as outfitting each rental location would cost less than $300 each) and the Defendant's failure to modify its practice after being asked by Plaintiffs is a violation of the ADA.

87.     Under the ADA, a public accommodation is not permitted to deny persons with disabilities the opportunity to participate in or benefit from a privilege, advantage, or accommodation or to provide such opportunities that are not equal to that afforded to other individuals. 42 U.S.C. §12182(b)(1)(A)(i)&(ii).

88.     Moreover, it is unlawful and discriminatory to provide privileges, advantages or accommodations to persons with disabilities that are different or separate from that provided to other person unless such an action is necessary to ensure that the opportunity is as effective as that offered others. 42 U.S.C. § 12182(b)(1)(A)(iii).

89.     Based on the above, Menards-Cicero and Menards-Hodgkins locations (which are owned and/or operated by Defendant) are each in violation of 42 U.S.C. §12181 et. seq., the ADA and 28 C.F.R. §36.302 et. seq. and Defendant is discriminating against Plaintiffs as a result of inter alia, the following specific violations: failure to remove a barrier which is readily achievable to accomplish by installing vehicle hand controls. 28 C.F.R. § 36.304(b)(21).

90.     Defendant Menard, Inc. has not offered opportunities that are equal to or as effective as that offered to non-disabled persons and is discriminating against persons with disabilities in violation of the ADA.

91.     To date, the readily achievable barrier and violation of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

92.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs injunctive relief; including an order to require the provision of hand controls when requested by individuals with disabilities so that its rental vehicles are readily accessible to, and useable by individuals with disabilities to the extent required by the ADA, and closing Menards-Cicero and Menards-Hodgkins locations until the requisite modifications are completed.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Ancel Montenelli and Class Members respectfully demand judgment against Defendant Menard, Inc. pursuant to Rule 57 of the FRCP stating that the Defendant's practices, policies, and procedures have subjected Plaintiff and Class Members to discrimination in violation of Title III of the ADA to permanently enjoin the Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services, programs, activities and facilities, as well as:

a)     The Court certifying this matter as a Class Action on behalf of the Class defined above, appoint Plaintiff Ancel Montenelli as Class representative, and appoint the undersigned as Class counsel;

b)       Issue a declaratory judgment that Defendant has violated Plaintiff Montenelli and Class Members' rights as guaranteed by Title III of the ADA;

c)       The Court declares that Menards is in violation of Title III of the ADA and order Menards locations stop all truck rentals to the public until such time that it is deemed by this Court to be accessible;

d)       The Court enter an Order requiring Defendant to provide hand controls for its rental vehicles at each of its Menards vehicle rental locations (as such cost has been shown to be less than $300 per hand control unit) so that they are accessible to and usable by individuals with disabilities to the full extent required by the Title III of the ADA;

e)       The Court enter an Order directing Defendant to evaluate and neutralize its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures;

f)       Mandate that Defendants executive board institute a Policy of Implicit Basis awareness and training.

g)       The Court enter an Order directing Defendant to develop a Public Awareness communications programs to: 1) Educate the Public as to the availability of ADD's in each of the Defendants stores where they rent trucks 2) Create in store  communications displays promoting the availability of ADD's in each of the Defendants stores where they rent trucks and 3) Internet / World Wide Web communications promoting the availability of ADD's in each of the Defendants stores where they rent trucks and vans.

h)      The Court award reasonable attorney's fees, compensatory damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to the Plaintiff, and the Court award reasonable costs and attorneys fees; and

i)      Award any and all other relief that may be necessary and appropriate.

Dated this 31st day of July, 2019.

Respectfully submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33181
Tel: (786) 431-1333
inbox@dininlaw.com
_Counsel for Plaintiff_

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 31st day of July, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and as such will be sent to the undersigned:

W. Anthony Andrews, Esq.
Stephen H. DiNolfo, Esq.
John Edward Motylinski, Esq.
Ottosen Britz Kelly Cooper
Montenellibert & Dinolfo, LTD.
1804 N. Naper Blvd; Suite 350
Naperville, Illinois 60563
Telephone: (630) 682-0085
E-mail: wandrews@ottosenbritz.com sdinolfo@ottosenbritz.com;
jmotylinski@ottosenbritz.com
_Attorney for Defendant_

_s/Scott Dinin_